IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY<br><br>Plaintiff,<br><br>v.<br><br>RYAN VANFLEET; VANFLEET TRUCKING, LLC; AND VILLAGE OF PLYMOUTH,<br><br>Defendants. | Case No.: |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES, Plaintiff, GREAT WEST CASUALTY COMPANY ("GWCC"), by its attorneys, Tressler LLP, and for its Complaint for Declaratory Judgment against Defendants, RYAN VANFLEET ("MR. VANFLEET") and VANFLEET TRUCKING LLC ("VANFLEET TRUCKING") and VILLAGE OF PLYMOUTH, states as follows:

### INTRODUCTION

1. This is a declaratory judgment action, in which GWCC seeks a declaration that it owes no duty to defend or indemnify MR. VANFLEET and VANFLEET TRUCKING with respect to the lawsuit entitled: *Village of Plymouth v. Ryan Vanfleet, in his individual capacity and Vanfleet Trucking, LLC*, Case No. 2024LA3, filed in the Circuit Court of Hancock County, Illinois (the "*Plymouth* Lawsuit")

2. An actual, substantial and judiciable controversy has arisen and now exists between MR. VANFLEET, VANFLEET TRUCKING and GWCC.

## PARTIES

3. GWCC is a Nebraska insurance company with its principal place of business in South Sioux City, Nebraska.

4. MR. VANFLEET is an individual and resident of Plymouth, Illinois as well as a member of VANFLEET TRUCKING.

5. VANFLEET TRUCKING is an Illinois limited liability company with its principal place of business located in Plymouth, Illinois.

6. Defendant VILLAGE OF PLYMOUTH ("Plymouth"), the plaintiff in the underlying *Plymouth* Lawsuit, is a municipality within Hancock and McDonough Counties, Illinois.

7. No specific relief is requested against Defendant Plymouth, as it is named solely as an interested party to be bound by the declaration of rights that GWCC seeks herein.

## JURISDICTION AND VENUE

8. Complete diversity of citizenship exists between GWCC, a citizen of Nebraska, and Defendants, who are citizens of Illinois. Damages at issue are in excess of $75,000 as they include the cost of MR. VANFLEET and VANFLEET TRUCKING's defense in the *Plymouth* Litigation as well as an alleged indemnity amount of $217,500.

9. Venue in this court is proper under 28 U.S.C. §1391(b)(1) and (2) because MR. VANFLEET resides in this district, VANFLEET TRUCKING does business in this district, the GWCC insurance policy that is the subject of this action was issued and delivered in this district, and the Underlying Lawsuit was venued in this district.

10. In light of the above, this court has jurisdiction pursuant to 28 U.S.C. § 1332 to hear this action and this court is the proper venue in which to bring this action.

**FACTUAL BACKGROUND**

**Underlying Action**

11. On March 6, 2024, Plymouth filed a Complaint ("Underlying Complaint") against MR. VANFLEET and VANFLEET TRUCKING. A true and correct copy of the Underlying Complaint in the *Plymouth* Lawsuit is attached hereto as Exhibit "A".

12. Plymouth alleges that, in early 2021, it awarded a contract to VANFLEET TRUCKING for the demolition of "the Potter Building," a building formerly located on the southeast corner of the Plymouth Village Square. (Exhibit "A," ¶15)

13. The work allegedly commenced on April 10, 2021, in which VANFLEET TRUCKING tore down the building, removed debris and filled the resulting hole to make a level lot ready for seeding. (Exhibit "A," ¶16)

14. Plymouth further alleges that MR. VANFLEET, as the duly elected road commissioner for Birmingham Township in Schuyler County, used debris from the demolition project as fill for the purpose of erosion control at three (3) locations in Birmingham Township, Schuyler County. (Exhibit "A," ¶17)

15. Plymouth alleges that it was contacted by the Illinois Environmental Protection Agency ("IEPA") on April 21, 2021 regarding the potential unlawful disposal of construction or demolition debris. (Exhibit "A," ¶20)

16. The IEPA allegedly conducted an investigation and determined the rubble and waste used by MR. VANFLEET as fill contained asbestos and was not "clean fill" per Illinois law and regulations. (Exhibit "A," ¶21-22)

17. Plymouth alleges that the IEPA concluded the improper use and/or disposal of the rubble and waste constituted eleven different violations of applicable state and/or federal regulations. (Exhibit "A," ¶24)

18. Plymouth alleges that following the IEPA's investigation, Plymouth was required to remediate the unlawful disposal of the debris at a cost of $217,500. (Exhibit "A," ¶26-27)

19. Plymouth alleges that MR. VANFLEET, a road commissioner and someone who holds himself out as a demolition professional, knew or should have known the debris could not lawfully be used as fill, should have known of disposal regulations, should have known the material contained asbestos and should have tested the debris for asbestos. (Exhibit "A," ¶28)

20. The IEPA Investigation Report is attached as an Exhibit to the Underlying Complaint and indicates that there was a possibility the asbestos could have seeped into the air, ground and entered the waterways. (Exhibit "A," ¶24, Ex. C)

21. The Underlying Complaint contains three separate counts against defendants: breach of contract, negligence and willful and wanton conduct. (Exhibit "A," Counts I-III)

22. With respect to the breach of contract claim, Plymouth alleges MR. VANFLEET and VANFLEET TRUCKING performed the contracted work in a manner that failed to meet industry standards, which resulted in a breach of contract. Plymouth also alleges that MR. VANFLEET and VANFLEET TRUCKING breached its contractual duty to lawfully dispose of the debris. (Exhibit "A," Count I, ¶36-37)

23. With respect to the negligence claim, Plymouth alleges that MR. VANFLEET and VANFLEET TRUCKING owed it a duty to perform the contracted work in a workmanlike matter that meets industry standards, lawfully dispose of debris from demolition of the building and comply with IEPA standards. (Exhibit "A," Count II, ¶40)

24. Plymouth alleges MR. VANFLEET and VANFLEET TRUCKING failed to meet those standards and thus breached its duties owed to Plymouth. (Exhibit "A," Count II, ¶41)

25. As to the willful and wanton count, Plymouth alleges MR. VANFLEET and VANFLEET TRUCKING consciously decided to unlawfully dispose of the asbestos-infected debris and acted with deliberate intention to harm Plaintiff, the individuals who reside or travel near the three (3) dump sites, and the general public. (Exhibit "A," Count III, ¶53)

26. Plaintiffs seek recovery of damages in the amount of $217,500, which represents the cost to remediate the unlawful dispose and come into compliance with appliable state and federal law. (Exhibit "A")

## THE POLICY

27. GWCC issued to its named insured, VANFLEET TRUCKING, LLC, a Commercial Lines Policy No. MCP51946B for the policy period of August 18, 2020 to August 18, 2021 ("the Policy"). A true and correct certified copy of the Policy with premium information redacted is attached hereto as Exhibit "B."

28. The Policy Declarations specify VANFLEET TRUCKING, LLC is the Named Insured. (Exhibit "B")

29. The Commercial General Liability Coverage ("CGL") Part of the Policy provides the following:

**SECTION I - COVERAGES**
**COVERAGE A**
**1.    BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend any insured against a "suit" asking for such damages. However, we

>>have no duty to defend any insured against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

*** 

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
>> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

***

(Exhibit "B")

30. The Policy includes the following exclusions:

> **2. EXCLUSIONS**
>
> This insurance does not apply to:

***

> **a. Expected or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

> **l. Damage to Your Work**
>
> "Property damage" to "your work" arising out of any part of it and included in the "products completed operation hazard."
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

***

> **r. Asbestos**
>
> "Bodily injury" or "property damage" arising out of:
>
> * * *
>
>> **(3)** The removal of asbestos from any good, product or structure; or

6

    (4)    The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos; or

    (5)    Payment for the investigation or defense of any loss, injury or damage or any cost, fine, or penalty or for any expense of claim or "suit" related to any of the above.

31.    The Policy includes the following relevant exclusionary endorsement:

**POLLUTION EXCLUSION – LIMITED EXCEPTION FOR A SHORT-TERM POLLUTION EVENT**

**A.** The following replaces Exclusion **f.** under Paragraph **2. Exclusions** of **Section 1 - Coverage A** - **Bodily Injury And Property Damage Liability:**

    **f. Pollution**

        **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

        **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

        **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured:

        **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

        **(iv)** "Bodily injury" or "property damage" arising out of a "short-term pollution event" provided you notify us of the "short-term pollution event" as soon as practicable, but no more than fourteen (14) days after its ending.

7

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        **(i)** Any insured; or

        **(ii)** Any person or organization for whom you may be legally responsible; or

    **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

        **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor;

        **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

        **(iv)** "Bodily injury" or "property damage" arising out of a "short-term pollution event" provided you notify us of the "short-term pollution event" as soon as practicable, but no more than fourteen (14) days after its ending.

    **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

  **(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants". However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**B.** The following are added to the **Definitions** Section:

**1.** "Short-term pollution event" means a discharge, dispersal, release or escape of "pollutants" which:

  **a.** Begins during the policy period;

  **b.** Begins at an identified time and place;

  **c.** Ends, in its entirety, at an identified time within forty-eight (48) hours of the beginning of the discharge, dispersal, release or escape of the "pollutants";

  **d.** Is not a repeat or resumption of a previous discharge, dispersal, release or escape of the same pollutant from essentially the same source within twelve (12) months of a previous discharge, dispersal, release or escape;

  **e.** Does not originate from an "underground storage tank"; and

  **f.** Is not heat, smoke or fumes from a "hostile fire".

To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of

the same "pollutants" from essentially the same source, considered together, must satisfy Provisions **a.** through **f.** of this definition to be considered a "short-term pollution event".

2. "Underground storage tank" means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

32. The Policy includes the following conditions:

**2.    DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS**

   a.   You must see to it that we and any other insurer which has available coverage under Coverage A or B of this Coverage Part are notified as soon as possible of an "occurrence" or an offense which may result in a claim.

   \*\*\*

   b.   If a claim or "suit" is brought against any insured, you must:

   (1)   Immediately record the specifics of the claim or "suit" and the date received; and

   (2)   Notify us as soon as practicable and see to it that we receive written notice of the claim or "suit" as soon as practicable.

(Exhibit "B")

33. The Policy includes the following relevant definitions:

**SECTION V −DEFINITIONS**

\*\*\*

15.   **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

17.   **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or

reclaimed.

18. **"Products-completed operations hazard":**

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

   **(a)** When all of the work called for in your contract has been completed.

   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

***

19. **"Property damage"** means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

27. **"Your work":**

   a. Means:

   **(1)** Work or operations performed by you or on your behalf; and

  **(2)** Materials, parts or equipment furnished in connection with such work or operations.

 **b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

  **(2)** The providing of or failure to provide warnings or instructions.

**COUNT I – DECLARATORY JUDGMENT BASED ON THE ASBESTOS EXCLUSION**

34. GWCC re-alleges and incorporates the allegations set forth in paragraphs 1-33 as if set forth herein.

35. The Policy's Asbestos Exclusion excludes coverage for "property damage" arising out of the disposal of asbestos or goods or products containing asbestos. (Exhibit "B")

36. The Underlying Complaint alleges Plymouth sustained damages arising out of the disposal of asbestos or goods or products containing asbestos. (Exhibit "A," ¶37)

37. Additionally, Plymouth is seeking to recover its remediation costs or expenses related to the disposal of asbestos products. (Exhibit "A," ¶38)

38. The Asbestos Exclusion applies to exclude coverage for the Lawsuit under the Policy.

39. For these reasons, GWCC does not owe any obligation to MR. VANFLEET and VANFLEET TRUCKING for the *Plymouth* Lawsuit under the CGL Coverage Part afforded under the Policy.

**COUNT II – DECLARATORY JUDGMENT BASED ON THE POLLUTION EXCLUSION**

40. GWCC re-alleges and incorporates the allegations set forth in paragraphs 1-33 as if set forth herein.

41. The Policy's Pollution Exclusion, modified by Endorsement, bars coverage for "bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured. (Exhibit "B")

42. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. (Exhibit "B")

43. The Underlying Complaint alleges that MR. VANFLEET and VANFLEET TRUCKING's demolition activities caused asbestos-containing fill to be improperly disposed of as waste at three separate properties. (Exhibit "A," ¶43)

44. Plymouth also alleges the asbestos containing materials are harmful to persons and the environment. (Exhibit "A," ¶52)

45. The IEPA investigation further indicated there was a possibility the asbestos could have seeped into the air, ground and entered the waterways. (Exhibit "A," ¶ 24, Ex. C)

46. The Policy's Pollution Exclusion applies to exclude coverage for the Lawsuit under the policy.

47. For these reasons, GWCC does not owe any obligation to MR. VANFLEET and VANFLEET TRUCKING for the *Plymouth* Lawsuit under the CGL Coverage Part afforded under the Policy.

**COUNT III – DECLARATORY JUDGMENT BASED ON THE EXPECTED OR INTENDED INJURY EXCLUSION**

48. GWCC re-alleges and incorporates the allegations set forth in paragraphs 1-33 as if set forth herein.

49. The policy's Expected or Intended Injury Exclusion excludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured. (Exhibit "B")

50. In the Underlying Complaint's Willful and Wanton Claim, Plymouth alleges MR. VANFLEET and VANFLEET TRUCKING consciously decided to unlawfully dispose of the asbestos-infected debris and acted with deliberate intention to harm Plaintiff and the individuals who reside or travel near the three (3) dump sites. (Exhibit "A," Count III, ¶53)

51. Thus, the Policy's Expected or Intended Injury Exclusion excludes coverage for any damages resulting from harm intentionally caused by MR. VANFLEET and VANFLEET TRUCKING.

52. For these reasons, GWCC does not owe any obligation to MR. VANFLEET and VANFLEET TRUCKING for the *Plymouth* Lawsuit for any damages resulting from intentional conduct under the CGL Coverage Part afforded under the Policy.

## COUNT IV – DECLARATORY JUDGMENT BASED ON LATE NOTICE

53. GWCC re-alleges and incorporates the allegations set forth in paragraphs 1-33 as if set forth herein.

54. The allegedly wrongful work conducted by MR. VANFLEET and VANFLEET TRUCKING occurred in or around April 2021. (Ex. "A", ¶16)

55. The IEPA investigation into the allegedly wrongful disposal of construction materials took place in or around June 2021.

56. The Underlying Complaint was filed in the *Plymouth* Lawsuit on March 6, 2024. (Ex. "A")

57. MR. VANFLEET and VANFLEET TRUCKING first provided GWCC with notice of the *Plymouth* Lawsuit on May 14, 2024.

58. MR. VANFLEET and VANFLEET TRUCKING failed to provide notice to GWCC "as soon as possible" of the "accident" or "offense" that may result in a claim. (Exhibit "B")

59. As MR. VANFLEET and VANFLEET TRUCKING violated the notice condition of the GWCC Policy, GWCC has no duty to defend or indemnify MR. VANFLEET and VANFLEET TRUCKING for the Underlying Lawsuit.

WHEREFORE, Plaintiff, GREAT WEST CASUALTY COMPANY respectfully requests that this Court enter an Order finding and declaring that it has no duty to defend or indemnify Defendants, RYAN VANFLEET and VANFLEET LOGISTICS, LLC in the *Plymouth* Lawsuit, and that judgment be entered in its favor and against RYAN VANFLEET and VANFLEET LOGISTICS, LLC, and grant such further or other relief to GREAT WEST CASUALTY COMPANY as this Court deems just and proper.

**GREAT WEST CASUALTY COMPANY**

By: */s/ William K. McVisk*
One of its Attorneys

William K. McVisk
TRESSLER LLP
233 South Wacker Drive – 61st Floor
Chicago, Illinois 60606-6399
Tel: (312) 627-4000
Fax: (312) 627-1717
WMcVisk@tresserllp.com
Attorneys for Plaintiff Great West Casualty Company