UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| GREAT WEST CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-04161-SLD-RLH |
| | ) | |
| RYAN VANFLEET, VANFLEET | ) | |
| TRUCKING, LLC, and VILLAGE OF | ) | |
| PLYMOUTH, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Plaintiff Great West Casualty Company's ("GWCC") Motion for

Summary Judgment, ECF No. 15, and Motion for Default Judgment Against Ryan VanFleet and

VanFleet Trucking, LLC, ECF No. 16, as well as Defendant Village of Plymouth's ("Plymouth")

Cross Motion for Summary Judgment, ECF No. 18.  GWCC seeks declaratory judgment that it

has a duty to neither defend nor indemnify Defendants Ryan VanFleet ("Ryan") and VanFleet

Trucking, LLC ("VanFleet Trucking") (together, "VanFleet") in their pending state court suit

brought by Plymouth ("underlying suit"), *see* 2024LA3, Hancock County, IL,

https://www.judici.com/courts/cases/case_history.jsp?court=IL034015J&ocl=IL034015J,2024L

A3,IL034015JL2024LA3P1 (last visited Jan. 20, 2026).  Plymouth seeks summary judgment on

the issue of GWCC's duty to defend VanFleet in the underlying suit.  For the reasons that follow,

Plymouth's motion for summary judgment is DENIED; GWCC's motion for summary judgment

is GRANTED; and GWCC's motion for default judgment is GRANTED.

1

BACKGROUND[1]

I.     Facts of the Case

Ryan owns and operates VanFleet Trucking.  GWCC issued Commercial Lines Policy No. MCP51946B ("the policy") to VanFleet Trucking, the named insured, for a policy period spanning from August 18, 2020, to August 18, 2021.  The policy included a Commercial General Liability Coverage ("CGL") portion, as well as exclusions for asbestos, pollution, willful and wanton conduct, and unreasonable notice.

On April 7, 2021, Plymouth contracted with VanFleet Trucking to demolish the "Potter Building," a structure situated on the southeast corner of the Plymouth Village Square.  Work began on April 10, 2021.  As part of the work, VanFleet Trucking tore down the Potter Building and removed the resulting debris.  Ryan, who at the time also served as the road commissioner for Birmingham Township in Schuyler County, Illinois, used the demolition debris as fill for erosion control at three distinct locations in Birmingham Township.

On April 21, 2021, the Illinois Environmental Protection Agency ("IEPA") contacted Plymouth and informed it of a potentially unlawful disposal of construction or demolition debris.  Subsequently, the IEPA investigated and concluded that the demolition debris Ryan used was not "clean fill" under Illinois law, ultimately finding eleven different violations of state or federal

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  Thus, when considering the cross-motions for summary judgment, the Court relies upon facts, unless otherwise noted, taken from GWCC's statement of undisputed facts, GWCC Mot. Summ. J. 2–7; Plymouth's statement of undisputed facts, Plymouth Mot. Summ. J. 2–3; Plymouth's undisputed statement of additional material facts, Plymouth Resp. 4, ECF No. 17; and from the exhibits to the motions, responses, and reply.

For the purposes of summary judgment, "the well-pled allegations of the complaint relating to liability are taken as true." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012).  Accordingly, the facts relied upon when discussing the motion for default judgment are, unless otherwise noted, taken from GWCC's Second Amended Complaint, ECF No. 8.  To comply with both standards, this factual section will discuss only the facts presented in both the motions for summary judgment and the second amended complaint.  Any remaining pertinent facts present either in the complaint but not in the summary judgment motions or in the summary judgment motions but not in the complaint will be discussed in the relevant analyses sections.

environmental regulations. As a result, Plymouth spent $217,500.00 remediating the unlawful disposal of the demolition debris and coming into compliance with relevant laws and regulations. Remediation included removal, hauling, and proper disposal of the demolition debris at the former site of the Potter Building and from each of the three Birmingham Township locations.

## II. Procedural History

On March 6, 2024, Plymouth filed its initial complaint against VanFleet in Hancock County, Illinois, initiating the underlying suit. GWCC was first alerted of the underlying incident and suit on May 14, 2024. On August 30, 2024, GWCC filed its complaint with this Court, seeking declaratory judgment that it has neither a duty to defend nor indemnify VanFleet in the underlying suit. GWCC Compl., ECF No. 1.[2] GWCC's initial complaint lacked sufficient information to establish that the Court had subject matter jurisdiction over the case, *see* Sept. 10, 2024 Order 1, ECF No. 3, so GWCC filed its first amended complaint to remedy this issue, GWCC First Am. Compl., ECF No. 4.

On October 8, 2024, Plymouth filed its first amended complaint against VanFleet in the underlying suit ("underlying complaint").[3] Plymouth First Am. Compl., GWCC Second Am. Compl. Ex. B, ECF No. 8 at 51–66. In the underlying complaint, Plymouth brings seven counts: breach of contract against VanFleet Trucking (Count I), and negligence (Counts II and IV), willful and wanton conduct (Counts III and V), and implied indemnity (Counts VI and VII)[4]

---

[2] GWCC brings this suit pursuant to 28 U.S.C. § 2201, under which a court can "declare the rights and other legal relations of any interested party seeking such [a] declaration" in a case within its jurisdiction. This case is within the Court's diversity jurisdiction as GWCC is a citizen of Nebraska; Ryan, VanFleet Trucking, and Plymouth are all citizens of Illinois; and the amount in controversy is more than $75,000. *See id.* § 1332(a). The parties agree that Illinois law governs the dispute.

[3] The parties seem to refer to Plymouth's initial complaint as the underlying complaint, but the Court declines to do so. With the filing of its amended complaint, Plymouth mooted its original complaint.

[4] Plymouth's first amended complaint lists two count VIs—one against VanFleet Trucking and one against Ryan. *See* Plymouth First Am. Compl. 11–15. The Court construes the second count VI, the one against Ryan, as Count VII.

against both VanFleet Trucking and Ryan.  Plymouth's underlying suit seeks recovery for the $217,500.00 spent on remediation and compliance efforts.

On October 15, 2024, GWCC filed a motion for leave to file a second amended complaint, indicating that due to Plymouth amending the complaint in the underlying suit, GWCC's amended complaint no longer accurately reflected the underlying suit.  Mot. Leave File, ECF No. 7.  The Court granted the motion, Oct. 16, 2024 Text Order, and GWCC filed the second amended complaint, ECF No. 8, which is the operative complaint for this case, on October 17, 2024.  The operative complaint brings four counts against VanFleet and Plymouth: declaratory judgment based on the asbestos exclusion (Count I), declaratory judgment based on the pollution exclusion (Count II), declaratory judgment based on the expected or intended injury exclusion (Count III), and declaratory judgment based on late notice (Count IV).  *Id.* at 12–16.  On January 30, 2025, GWCC filed a motion for default against VanFleet, ECF No. 14, and default was entered on February 28, 2025, Feb. 28, 2025 Entry of Default.  Subsequently, the pending motion for default judgment and motions for summary judgment were timely filed.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  At the summary judgment stage, the court's function "is not to weigh . . . the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial"—that is, whether there is sufficient evidence favoring the non-moving party for a factfinder to return a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997).  When reviewing cross-motions for

4

summary judgment, the court must view the evidence in the light most favorable to and draw all reasonable inferences in favor of the party against whom the motion under consideration was filed. *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). "A genuine issue for trial exists only when a reasonable [factfinder] could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quotation marks omitted). When there is no material factual dispute, contract interpretation is a question of law that the court may decide on summary judgment. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012).

## II.    Analysis

GWCC and Plymouth agree that the asbestos exclusion, the pollution exclusion, and the intentional injury exclusion cover at least some of the allegations in the underlying complaint. *See generally* GWCC Mot. Summ. J.; Plymouth Mot. Summ. J. 6. GWCC argues that they cover all of the allegations in the underlying complaint, meaning that it has no duty to defend (and therefore no duty to indemnify) VanFleet in the underlying suit. GWCC Mot. Summ. J. 8–11, 13–14; GWCC Resp. 3–5, ECF No. 19. But Plymouth argues that its suit brings claims for non-intentional conduct and for property damage not related to asbestos or pollutants under the meaning of those provisions and that, accordingly, the suit brings claims that are potentially within coverage. Plymouth Mot. Summ. J. 6; Plymouth Resp. 6–8, 9, ECF No. 17. In response, GWCC argues that any claims not related to asbestos and instead based on the mere presence of debris do not seek relief for property damage caused by an occurrence under the policy. GWCC Resp. 5–7.

"To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or

5

*potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) (emphasis in original).  The Court construes the policy according to the plain and ordinary meaning of its terms. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006).  "[P]rovisions that limit or exclude coverage will be interpreted liberally in favor of the insured and against the insurer." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010) (quotation marks omitted).  That not all of the injuries complained of fall within the scope of the policy does not obviate an insurer's duty to defend. *Roman Cath. Diocese of Springfield v. Md. Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998) (collecting Illinois cases).  "[S]o long as at least some injuries potentially fall within the scope of the policy, the insurer must defend the insured." *Id.*

As relevant to this case, the policy provides coverage for damages the insured becomes obligated to pay because of "property damage" that is caused by an "occurrence," in the coverage territory, during the policy period, if no authorized individual knew of the occurrence or claim prior to the policy period.  Policy 77,[5] GWCC Mot. Summ. J. Ex. A, ECF No. 15-1. The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." *Id.* at 97.  The policy defines "occurrence" as "an accident." *Id.* at 96.

Plymouth notes that its underlying complaint alleges that VanFleet used "demolition debris as fill for erosion control" and that VanFleet's use of that demolition debris would have violated the IEPA even if it did not contain asbestos or other hazardous materials.  Plymouth Mot. Summ. J. 6; Plymouth Resp. 6 ("[T]he Village's claims are also based on the VanFleet

---

[5] Due to the Policy's discontinuous pagination, the Court uses CM/ECF pagination when citing to the policy.

Defendants' use of the demolition debris as fill for erosion control at multiple sites in Birmingham Township regardless of the presence of asbestos."). GWCC argues, in response, that because "[t]here is no allegation that . . . VanFleet . . . accidentally placed the demolition debris at the three sites" and Plymouth alleged that VanFleet knew it could not legally use its demolition debris as erosion fill, the property damage was not caused by an occurrence. GWCC Resp. 6. The second of GWCC's factual premises is misleading as Plymouth alleged that VanFleet either knew or *should have known* that the demolition debris could not be used as erosion fill under the IEPA. *See* Plymouth Reply 1 & n.1. Nevertheless, the Court concludes that even an allegation that VanFleet placed the debris at the sites without knowledge that it was illegal dirty fill unable to be used for that purpose under the IEPA does not turn this into a suit seeking damages for property damage caused by an occurrence that is otherwise not excluded under the asbestos or pollution exclusions.

Neither side seems to dispute that the presence of the demolition debris at the sites constitutes property damage, and the Court agrees that it does. Property damage includes "[p]hysical injury to tangible property." Policy 97. "[T]angible property suffers a physical injury if the property is altered in appearance, shape, color or in other material dimension." *Acuity v. M/I Homes of Chi., LLC*, 234 N.E.3d 97, 106 (Ill. 2023) (citations omitted). The presence of the fill at the sites altered the appearance of those sites and no one disputes that VanFleet intentionally placed demolition debris at the three sites. If the mere presence of the demolition debris at the sites is the claimed property damage, it was clearly not accidental.

In Illinois, the term "accident" in a commercial insurance policy "encompasses the unintended and unexpected harm caused by negligent conduct." *Id.* at 107. "Determination of whether an occurrence is an accident is focused on whether the injury is expected or intended by

7

the insured, not whether the *acts* were performed intentionally." *United Nat'l Ins. Co. v. Faure Bros. Corp.*, 949 N.E.2d 1185, 1191–92 (Ill. App. Ct. 2011). Relying on this case law, both sides pivot to talking about whether the injury—which they describe as being "that the IEPA would require remediation and removal of the fill from the sites in question," GWCC Resp. 6–7; Plymouth Reply 2, ECF No. 20 ("the requirement to remediate the locations following the unlawful use of the debris as fill")—was intended or expected. GWCC Resp. 6–7; Plymouth Reply 2. But so described, that "injury" is not a physical injury to property that is covered by the policy. It is a regulatory enforcement action which impacted Plymouth because Plymouth had to pay to comply. Based on the arguments before it, the Court finds that any non-asbestos based allegations in the underlying complaint do not seek damages for property damage caused by an occurrence, so they are not covered. As such, GWCC has no duty to defend or indemnify VanFleet in the underlying suit. *See Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993) (holding that an insurer has a duty to indemnify only if the facts alleged against the insured actually fall within the insurance policy's coverage).

## CONCLUSION

Accordingly, Plymouth's Cross Motion for Summary Judgment, ECF No. 18, is DENIED. GWCC's Motion for Summary Judgment, ECF No. 15, is GRANTED. Because the facts alleged in GWCC's second amended complaint, ECF No. 8, are substantially the same as those the Court considered when ruling that the summary judgment motions establish that GWCC does not have a duty to defend or indemnify, GWCC's Motion for Default Judgment Against Ryan VanFleet and VanFleet Trucking, ECF No. 16, is also GRANTED. *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (finding that upon a party's default, the complaint's well-pleaded allegations as to liability are deemed admitted); *PNC Bank,*

8

*Nat'l Assoc. v. Michael A. Nordwall, Ltd.*, No. 1:13-cv-01469-SLD-JAG, 2014 WL 12698572, at

*1 (C.D. Ill. Nov. 19, 2014) (Once allegations are deemed admitted, "it remains for the court to

consider whether the unchallenged facts constitute a legitimate cause of action, since a party in

default does not admit mere conclusions of law." (quotation marks omitted)).  The Clerk is

DIRECTED to enter judgment and close the case.

Entered this 25th day of March, 2026.

s/ Sara Darrow

SARA DARROW
UNITED STATES DISTRICT JUDGE